Case number 21-3075. United States of America v. Eleanor R. Milligan, Appellant. Mr. Hicks for the Appellant. Mr. Han for the Appellant. Good morning, Counsel. Mr. Hicks, please proceed when you're ready. Thank you, Your Honors, and may it please the Court, George Hicks for Appellant Eleanor Milligan. There is no dispute in this case that Ms. Milligan never put intent or mistake at issue. As her counsel candidly told the District Court, quote, we are not contesting intent or lack of mistake, and he added, quote, it's just not a live question. Accordingly, the 404B other act evidence regarding Ms. Milligan's uncharged conduct that the government introduced specifically to establish intent and lack of mistake had no probative value. And like all 404B evidence, it was prejudicial because it conveyed to the jury Ms. Milligan's propensity to engage in the conduct that was actually charged. But the prejudice was even more pronounced than in a typical 404B case for several reasons. What do you do with the, you quote what the counsel said at trial, but pre-trial, the district judge asked if he was prepared to stipulate intent, and he said no. He said very clearly, he said, he said, quote, let me be very clear. I'm not stipulating to intent or lack of mistake. Your Honor, counsel made that statement during the pre-trial conference when the motion was first being heard on July 9th. Later during trial on July 21st, he made very clear that they were not, Ms. Milligan was not contesting. He said we're not contesting, we're not making that argument, it's just not a live question. And I think the salient question for purposes of this analysis about trying to determine what the probative value is and what the prejudice might be on the other side of the balance is whether the purpose for which the other act evidence is introduced is actually at issue. The Seventh Circuit makes that very clear in its Gomez case on Bonk where it says an important issue in the Rule 403 balancing is the extent to which the non-propensity factual proposition actually is contested in the case. It later says the degree to which the non-propensity issue actually is disputed in the case will affect the probative value of the other act evidence. And I think even the district court understood that on July 21st because he doesn't phrase his decision in terms of there being a formal stipulation or not. He refers to the defendant, quote, passing on contesting the issue in a live way at trial. And I think that makes the difference here, at least when you're certainly when you're looking at the probative value. I mean, the government's motion was premised on the proposition that intent and mistake were at issue. And by the time of July 21st, it was made clear to all both the district court and the government that that was not the case. She was not putting on a defense. I mean, no criminal defendant has to put on a defense at all. But that doesn't mean that the elements are not at issue and that they have to be found by a jury beyond a reasonable doubt. And so intent was still the mens rea was still very much at issue and that the government had to prove it beyond a reasonable doubt to each and every single juror. Well, certainly it's still a live issue, very much a live issue with a very heavy burden on the government. Well, certainly it's still the government's burden to prove all that. But that would be the case in any situation where you've got four or four B. And so I think that that would not be entirely consistent with the cases that say when the the other act evidence is used for purpose, whether it's. But it's not an issue that probative need remains from the government's perspective and from its burden. The probative the need for probative evidence to establish intent remains. So it's just I don't quite understand saying intent was not a live issue, just that the defendant chose to stay quiet. That issue was a stipulation to hand to the jury. There's no stipulation. But I think that when you're trying to determine the marginal probative value, which I think really is the question here, it's not simply sort of probative value, probative value. It's the marginal value of that other act evidence over what's already in the case and what the government would need in order to surmount some sort of defense that raises intent. That's a different argument. That's a different argument that there's what evidence is already in the case. But I was I was struggling with your it's not a live issue. And it seems to me it very much is the marginal probative value relative to other evidence in the case. It feels to me like a different argument than just saying something's not an issue. Well, I think I think the when you're trying to determine what the marginal probative value is, you have to look at the extent to which it actually is tested in the case beyond simply. Well, it's an element. Therefore, it's always an issue. I mean, I think that's clear from the case of the government sites, almost all of which involve the defense putting on a defense. So there was evidence before the jury. That went to the question of mistake. It came from the government, the government put it on, but at least the government induced testimony that raised it. But there was evidence before the jury from which the jury could have thought about the question of mistake. I think there was one passing statement that was, as you say, put on by the government. So it seems a little backwards to me that the government can put on testimony that somehow allows them to then put the. But you're not you don't think that the government put on that testimony so that they could introduce the four or four or do. No, I don't think so. But I think it was a book that they then tried to use. And to be very clear, while we think that the marginal probative value of this was quite low, if if anything at all. When you look at the other side of the balance, I think the prejudice was significant. I mean, there's no dispute that for for the evidence is always prejudicial. That's the nature of it. There's no dispute that it's even more prejudicial when it's introduced for intent, as it was here in part. And it's even more prejudicial when the other act evidence is similar in nature to the charge defense. That's what we have here. And it was, in fact, almost right afterward in time as well. And to be very clear, the other act evidence in this case was extensive. It was over 60 pages of the trial transcript. That's a J.A. 172 to 232. This is that these are the last witnesses. And it was the last evidence that the jury heard before closing argument and deliberation and instructions. And I think that the prejudice that it's clear is shown by the fact that the district court's analysis of the prejudice. I don't think the government even defense the district court's explanation for why there was no prejudice here. Was that, well, the charge crime involved allegations of one point five million in in funds, whereas the other act evidence only involved fifty five thousand dollars. And I don't think that's the right way to look at the prejudice of other act evidence. The salient question is, what was the conduct? Was the conduct similar in kind and nature? And we have that here. It was very similar conduct. It was almost just a year or two after the charge conduct. And I think the takeaway from that for any jury would be to focus highly on the propensity evidence. Can I ask a following question? So if this piece of evidence that we were talking about earlier or a mistake comes up, if that's adduced in cross examination by defense counsel, not in a direct question that asks about it, but the question that asks about something else and the witness just volunteers that would your assessment of the balance here change? I think it would. I think it would change if that was part of the strategy of defense to on cross examination. But I think that, no, let's suppose it's not part of the strategy. It just comes up in cross examination. Wasn't planned, wasn't intended. It's a question that doesn't directly ask about it. But the defense, the witness volunteers it. You're right. I don't think it would affect the analysis too much again, because I think it is directed towards what the defendant is trying to put at issue in his or her defense. And if I could, Mr. Hicks, if you're let's assume you're right about that. The government makes a pretty strong argument that the error would be harmless. And the evidence is that only Milliken could access the paycheck system and her supervisor. Her supervisor testified that he never did. She took funds in the name of several employees and deposited them in one bank account completely controlled by her. And then she took steps to cover her tracks. So why isn't this pretty clearly harmless? Well, Judge Tittle, with respect, I think those are are very good arguments to make to a jury on a retrial without the aspect that was included. No, there are questions we ask also. Well, I don't think this court necessarily. And I think this court is clear. It doesn't step into the shoes of the jury. But you agree that we do apply harmless error analysis to a case like this, right? Sure. I think I think you're I think you're trying to decide whether the government has shown. But that's that's that's inherent in any harmless error analysis that we undertake. Yes. But I think also inherent in that is to look at if it's if, as you said, we're intruding on the right of the jury, then we would never engage in a harmless error. Well, I think you I think what you do is you look at the the nature of the prejudice that is trying to be addressed through the harmlessness error. And I and again, I think this goes beyond the mind run of cases where you've got just sort of mere or for the standard prejudice for the reasons. Let me let me just quickly change the subjects for you and ask you quickly about the sophisticated means enhancement, which you challenge. Assume that I think we apply a different standard. Assume that for purposes. How would I what we how would I give what explanation would I give for setting aside the enhancement here, given the evidence of the cover? How would I how would I how would I say I wouldn't give due deference to the district court's decision, particularly since the district court, they see these all the time. We don't. But your honor, I think that if you're if you're asking sort of what are the reasons that the sophisticated. No, no, no. I'm not asking that question. The question I'm asking is, let's assume I agree with you. To me, it doesn't look very sophisticated, but the district court thought it was and I owe due deference to the district court's assessment. Sure. So what would I say to to to set aside his judgment? Well, I want to explain what I explain that I can't defer to him. What's what's the rest of the sentence? I can't defer. We can't defer to the district court in this case because what's the rest of the sentence? I think it would be the same because that you use in your other abuse of discretion cases, your honor, which is that this would be finding the sophisticated means here would be beyond the range of a reasonable decision in light of the utter lack of sophistication. That wasn't here. Suppose you just stated the conclusion, the utter lack of sophistication. I mean, you know. Sophistication can mean one thing to one person and something to someone else. But let's just maybe I ask the question this way. Let's assume I thought it was a close case. That is, you can make the argument either way, sophisticated, not sophisticated. In other words, it wasn't clear one way or the other. Don't I have to defer to the district court on that ground? Your honor, I think if it was a close question, I think that then the standard of review would would come into play, as you say. But I think that when it is not, when the when the text of of the sentencing requirements, especially complex, I think especially mean something or especially intricate. I think you have to give some meaning to the word especially. And I don't think setting up a different email accounts or going and, you know, getting a P.O. box and promptly getting caught is especially complex. I mean, I think I would use a, you know, well, the fact that she's different, completely different. The fact that she got quickly caught doesn't mean it wasn't sophisticated. Right. Not really related to each other. Well, I don't think this is a situation where there was some sort of of years long hiding of anything that would be. Where do you find where do you find that standard in the guidelines? I mean, I think that that is indicative of something that would be especially complex or especially intricate, fictitious, creating corporate shells. I mean, I think when you look at that and you're trying to determine what sort of thing is especially intricate enough. Wasn't that what she did? She did. She did not create any. She did not create any corporate entities. She did not create any fictitious entities. She just. But, you know, said she said there's a serious one. It wasn't real, but it was. Why is it? I think that there. So you think the distinction is between the fact that she didn't really set up this really company, but only only called it one on paper. That's the difference between sophistication and not sophistication. Your honor. If I had to describe something as utterly not sophisticated, I think it would be this. Thank you. Make sure my colleagues don't have additional questions for you this time. We'll give you a little time for battle. Mr. Thank you, your honor. May it please the court. Brian Han for appellee of the United States. The trial court in this case did not abuse his discretion in admitting the University of Maryland Medical System or UMMS evidence. The trial court correctly recognized that under this court's precedent under rule 404B, even if appellant had offered to stipulate to the element of specific intent to defraud. That would not prevent the government from admitting this evidence under rule 404B. So long as it went to a non propensity issue, in this case, intent for lack of mistake or accident. The trial court also did not abuse its discretion in conducting the rule 403 balancing in this case and determining that the UMMS evidence, the unfair prejudice of it did not substantially outweigh. Where did the district court do the 403 balancing essentially said it comes in because it's probative. And it was less money, but it never maybe you can tell me where it talked about what's from court and old chief called the relative probative value of adding this other piece of evidence on top of all the evidence is already in the mix. Where did it do that? So we think that on page 291 to 292 of the July 21st transcript is where the trial court specifically undergoes the 403 balancing. I think I agree with your honor, which I'm on page 291, the July 21st transcript. I think I agree with the court that the trial court doesn't specifically say, you know, this is what the specific probative value here is. But the court does recognize that the evidence is of a probative value to intent and lack of mistake or accident. I don't have a 2. My appendix goes up into 240 and the J. Do you have the page? I'm sorry, I don't have the page. I apologize. I'm sorry. Remind me which statements I'm at the right one. Is it in the are the pages in the appendix? I am not sure of that. You're actually so I apologize. I only have the transcript citation in front of me, but I think that read me what the judge said. I don't have the specific quotation. You're right. But we don't have the pages and we don't have the language. So, so I don't have the J pages and I don't have the quotation in front of me. But what the trial court does say is that the defendant, what the trial court does, it looks like it's in the supplemental appendix pages 111 and 112. Thank you. I appreciate that. I appreciate that help. What the trial court does say is that the government still has the burden of proof and proving intent that it's also probative of mistake or lack of accident because there was testimony in the case. That appellant told her bosses at when they, they noticed that there were some payments, David Morgan, that shouldn't have been paid out. That it must have been a mistake or accident in terms of, I think, what she said was that she had access the system in order to some of that stress access the system and it must have accidentally started the payments over again. And I think that particularly when you're looking at the evidence, both the fact that it is close in time and that the scheme is very similar to the evidence lens probative value to it for intent in this case. I just want to get back to I understand that argument. I'm trying to get back to whether the district court did. The balancing that 403 requires under precedent chief. And that is not does this have probative value. And is it too prejudicial. It's because it doesn't have probative value it's not even irrelevant to come in so that's not really doing anything on that side. And the Supreme Court said a lot of time talking about, you need to analyze the relative probative value. Or what your friend calls marginal probative value, the Supreme Court's words were relative probative value. And so, did the district court do that? And if so, where? So, what the district court says specifically is that it is considering the fact that appellant did not, you know, avoided the issue of specific intent in cross examination. And says that that all the other evidence in the record. So, I read the district court when when counsel for Milligan said, you need to look at marginal probative value discourse and no, I don't. That's not the test, so did not seem to engage in this analysis. I think I disagree. I think what the trial court says is that it recognizes the trial court does recognize that the fact that appellants did not, you know, make a full throated defense did not cross examine witnesses. Based on the on the issue of specific intent does affect the probative value and might do so in a marginal way, but that it did affect the court's view of the probative. And I don't know of any precedent your honor that that suggests that the trial court needs to explicitly at layout every single piece or factor in the rule for three analysis when making its decision. I think that the record just has to reflect that the court, in fact, did do a proper four or three analysis. I think it does so here because the trial court does, in fact, reference the fact that appellants way of trying the case does affect what the trial court views as the probative value of the evidence. And then the trial court goes on to view the unfair prejudice. And again, I don't think the trial court explicitly talks about what the unfair prejudice is. I think everyone sort of knows what the unfair propensity prejudice is from. But the trial court says, look, the, the amount of money that was taken from is much lower than the, it's about fifty five thousand, I believe, much lower than the over one point five million dollars that was defrauded from. And therefore, it's unfair prejudice is lessened because of that. I'm not sure I completely follow that because the prejudice, it seems to me, the potential prejudice comes not from the amount of the fraud, but from the fact of it. It's that this is a this is the type of stuff this person has done before. Ergo, they probably did at this time, too. And the fact that last time they might not have gotten as much money. Yeah, I mean, you could sort of look at it in some abstract way and said, boy, that troubles me at level a might trouble me a level B if the fraud had been even more successful. But really, the work is being done, not by the amount that's ultimately gain, but by the pattern of conduct. So, so I think I agree that there is some unfair prejudice prejudice inherent in the fact that the scheme is the same that the conduct is the same. I think that as you, I think you just said that you might care about it more or less a or B on those different levels, depending on the amount of money that was taken. And certainly, if we were trying to bring in evidence of the fraudulent scheme in a trial for charging appellant with defrauding, I think that the amount of money would affect the unfair prejudice analysis there, because I do think that when a jury looks at the amount of money that's taken. If it is extremely large amount versus a much smaller amount, I think that that does affect. But then the jury, the jury sitting there looking at the evidence, aren't they saying. Do I think this person is guilty of the offense? I don't know that it's a I think it's less likely the person is guilty of the offense because the last time they did it, they didn't get that much money. Well, so I think that it's it's the the question is how a judicial is in terms of, like, can we attribute sort of bad character to this person? Right. It's the unfair propensity inference and propensity to engage in the criminal conduct. Right. But which was engaged in, even if it wasn't. Yes, but I was born weren't quite as juicy. Yes, but I do think that more serious criminal conduct is more prejudicial than less serious. It's really all that's part of what the trial court's analysis was. I do want to say that even if this court believes that the rule for three evidence was admitted improperly, that in this case, it was harmless. There was substantial evidence that appellant specifically intended to defraud GMSI. There were many payments made to her bank account in the names of many different employees over the course of several years. And that when her bosses notice the discrepancies with David Morgan's payments, she engaged in this very sophisticated cover up scheme in order to throw them off her scent. And allowed her to perpetuate the scheme for additional years. And so I do think that in addition, the trial court gave a very detailed and specific instruction on how the jury was to use the evidence. And, of course, the government referred to it once and referred to it in conjunction with the instruction that the court gave. This is kind of the irony, because under 404, the government's argument is, you know, we need this evidence. Then we get to harmless error and they go, we didn't need it. We had so much other evidence and this really wouldn't have mattered to the jury anyhow. And that's exactly the type of upfront inquiry that the district court was supposed to undertake when it did 403 balancing. So it seems it seems like the defendant's kind of in a catch 22 here. You know, if it argues the balancing and the district court says, as it did, I don't think that's the test and I'm not going to do it. Then then they're never going to get it overturned because the government's going to turn around and say, we had so much evidence. This didn't really matter at all. How can the government say both things at the same time? So I think two things, your honor. First, I would say that the inquiry of the front end isn't whether or not the government needs the evidence, whether it's necessary for the government's case. Of course, it's whether or not the evidence is probative and whether or not it's unfair prejudice. No, it's more than just whether it's probative. That's the relevance inquiry. It is whether it's it's relative probative value that is in the scheme of the evidence presented. And that's why the district court wisely waited here until the government had put on, you know, most of his case in chief. And so now I see what you've got. Now, I see the sort of semi truckloads of evidence that you have brought in on this issue and nothing really pushing back from the other side. Why, you know, what is the value of putting this in? And the government there says we still need it. We still need it. So the jury will understand that it really was intent and not mistake. But then you can't turn around a harmless error stage and go, we didn't need it. It didn't matter to show intent or absence of mistake. That's that's that's what I'm wrestling. Yeah, I, you know, I think, your honor, again, I would say that the inquiry isn't whether or not the evidence is necessary for the government. I think the inquiry is necessary and having relative probative value that is probative value within additional probative value within the context of the case. And I think the government said at the 404 stage that we don't need it. We've got plenty to win on this record, but we'd like it. There was prejudice, a district court would almost necessarily abuse its discretion by letting it in if the government says we don't need it. We'd like to have it just to tie a bow on this. But that's sort of the argument that's made at the harmless error stage. So we think the additional probative value of the evidence is that it's different in kind than the other evidence that was admitted to show her lack of her specific. You know, you've got the evidence of the scheme and how broad it is. You've got evidence of the cover up. And then now you have additional evidence in the 404B evidence that she did a similar scheme later about a year later. And then also that when she goes through her exit interview, I'll call it her exit interview with UMMS, that, you know, while she doesn't specifically admit to wrongdoing, she does apologize for what happened. She offers to repay the money, and she offers some sort of reasons why she might have needed the money. Her husband died. Her son, she needs to pay for her son's calling. And so that I think your honor is different in kind and sort of has a different probative effect than the other evidence in the case. And that's why it's admissible under Rule 404B and Rule 403 and still can be, if erroneously admitted, harmless in the context of this case. I'm sure my colleagues don't have additional questions. If there are any questions about that. I wanted to ask about the enhancement. Of course. How do you define complex? I think I would define complex as something that is, you know, it's hard to use, not use the same words like, you know, the guideline uses the word intricate, I think, and complex and things like that. I think that. Sorry, it says intricate separate from complex. Yeah, it does. What is, what does complex mean? I think complex is sort of like, it's complicated. It is something that is. It's harder than normal. Yes. I would say that. Right, right. Well, and more maybe thought than normal. Yeah, a big stone can be harder than moving a little stone, but it does require complex, I think, requires some sort of right. Some sort of some sort of specialized knowledge or. Yes. Okay. And I think that in this case. How can there's 2.1 billion Gmail accounts in this world. Yeah, I'm dealing with a B. How can it be harder than normal and require specialized knowledge to set up a Gmail account. Yeah, I don't think that is the act in and of itself is setting up the Gmail account, or I think it's a white male account. That is the sophisticated means. What I think it is, is the use of that account to impersonate David Morgan. That's the fraud. Well, it's above and beyond the normal fraud. Your honor. I think it is. This is additional fraud on the bosses of the company in order to try and hide the fact that she has made these. Okay, so I've made a Gmail account and then I send an email from it. That's right. Complex. Well, she sends emails to them and then she's represented to them conversation. How is that complex? That's just lying. That's just lying. What specialized knowledge or complexity? Because that's what I'm wrestling with here. There's a standard in the guideline. Yeah. And this seems like stuff that in getting a PO box, oh, my gosh, anyone can walk in and do it. So there's nothing complex about the Gmail account or the YML account or getting the post office. And now you say, well, but using them to lie is what made it complex? And because she has the knowledge that the type of lies that she's telling her bosses will be ones that will cover up the scheme. I think she also. That's just covering up. So is every effort to cover up fraud complex? I think that. When you cover it up, that makes it complex. No, your honor. But I think that what makes it complex in this case is the additional steps that she took. I mean, you've already mentioned. The additional steps. I'm sorry. Right. So she. But I think we can agree. I can give you the number of post office boxes in this country if you want, but I don't think it's going to help you. So and they're really, really easy to set up. So if it's not the setting up the post office box and it's not the setting up the fake email account. She sends a promissory note to the GMSI in the name of David Morgan agreeing to pay back the money. Why does that make it? I get that she did these things to cover up. Why is that complex thing to do? I think the interlocking of all of these separate steps is the complex interlocking. It's just covering up. I mean, I don't think that it's. Okay, well, I'll give you that. It's complex. Now you have to tell me how it's especially complex because that's the standard of the guideline. Tell me how that is. If we say that's complex. How is it especially? Well, I think that based on what we've already talked about, it's especially complex. And I don't know that it looks like you're not going to. I'm puzzling. I haven't encountered this guideline. I'm really puzzling about what they mean by complex and intricate. We can sort of feel our way through that. But then they've got that especially complex and especially intricate, which I think we're obviously deliberately put in there as modifiers on how complex and how intricate it needs to be. And that's what I'm really trying. And then, you know, there's no sort of verbal formulation that's given by anybody. The district court just says, well, she created a P.O. box. She got a P.O. box. She created this account and used it to pretend to be this person to cover up for fraud in one instance of the frauds that she did. And that's all I saw the district court relying on. And so if I had to write an opinion to explain how that meets the standard of especially complex or especially intricate, that's why I'm asking you these questions. How would you write that to say this is not just more than the norm, that would just be complex? This is way beyond the norm. It is especially. It's beyond the norm of complex. How would you say that? I think that I would point to the comment to the guideline. I think it's 9B, which says that, among other things, the creation of a fictitious entity to hide these fraudulent transactions. But she didn't create an entity. She impersonated somebody. An entity is not a person. So, I mean, setting up an entity like a whole business or something, that probably does require more complex steps. But just lying and pretending I'm somebody else is not setting up an entity. Well, she did set up or at least represent that there was an entity called David Morgan rental properties. When she said she set it up, she set it up. Did she do anything to set up? Or she just said it existed. So I agree that she did not set up, you know, formally file paperwork with anything to set it up or just lie. But I don't think there was evidence that she did anything formal to set it up. But I think that you do anything informal to set it up. Well, I mean, she did, in fact, represent that it existed. So she lied. She lied about it. And she created documents that said that it existed. How would you compare the level of sophistication to what was at issue in McCants? I think that it is less sophisticated than McCants. I think that in McCants there was more sophistication there. It was across jurisdictions. Was this not across jurisdictions? This was across jurisdictions. It's true. This was across jurisdictions. I think that the district court didn't rely on that. The district court didn't rely on it. They didn't explicitly say that it's correct. But there's no dispute that it was. There isn't any dispute that it was. Well, actually, I think the defense at trial was that there was no venue because their whole argument was no interstate commerce. We know that that's, in fact, true. But the jury rejected that argument. And there was, you know, sufficient evidence at this trial for that. That's not being challenged. So, you know, but I do think McCants also says that even if you could imagine more sophisticated means of conducting a fraud, that doesn't mean that what happened in the particular case isn't sophisticated means that the enhancement doesn't apply. I would say, Your Honor, that I'm sorry. You have a question, Judge Tatel. Judge Tatel, in fact, brought up this point that the standard here isn't, you know, is really it's I think this court in Hunt said that it's really a factual finding by the trial. This is not this is not a factual finding. This is this is applying the there's no dispute about the facts here. This is applying the guidelines to the facts. These facts are not tested, at least at this point. That's why when I asked Mr. Hicks my questions, I asked him, isn't the proper standard due to difference? Yeah, there's no fact. I think I read Hunt to say that it's essentially a question. Isn't that right? I think I read Hunt to say that it's essentially a question of facts. But, you know, I think that whether or not that merits a clearly erroneous standard or a abuse of discretion standard, whether or not essentially sorry, essentially a question of fact means that standard. But I do agree that there is. Are you are you arguing with me about this because you don't think you can prevail if it's a due difference standard? No, no, I think that regardless of what standard we're talking about, there is deference owed to the trial court. Therefore, you know, that these should be. If there are no further questions from the court. I'd ask that this court from the convictions of this case. Thank you very much. Thank you. Mr. We'll give you two minutes for battle. Thank you, your honor. Just three quick points in rebuttal. First, as to the question of did the district court address relative probative value? And this is it. I know you have it from the other appendix. I'll give it to you, which is one thirty one thirty one. That is the entirety of the district court's analysis as to both probative value and prejudice. It's very short. And the answer is no. Is that the same? Are those the same pages? I believe they are. It is the July twenty first transcripts. But if you're looking for J. It's one. Thank you. And the answer is no. It did not address the probative value in terms of the relative probative value in light of the non undisputed non disputing of intense mistake. So we think that is contrary to old chief. And the case is saying that you do look at the relative probative value seconds. And as I think I can see, the district court really didn't engage in a prejudice analysis other than to say, I don't think it's prejudicial because the money just wasn't as much as the first time around. And as we've said, that just doesn't seem like the right way that you approach the prejudice from a four or four B of evidence. In addition, again, to all the other prejudice that we point out, that it's it was introduced for intent. It was similar in nature to the charged offense. It was right afterward in time and it was extensive. It comprised over 60 pages. And if you're looking for that, it's a J.A. one seventy two to two. Thirty two is all of the evidence for four B evidence at trial. And then the last point I'll make third is I believe I did hear the government say that the sophisticated means here was was allowed her to continue the scheme. And as we point out at page 40 of our opening brief, that's that's if you can't conflate the two, you can't conflate the sophisticated means with the fraud that is the underlying as the underlying element. And I thought there was a reference that cases referred to sophistication in the execution of the scheme to that. All right. I don't think it is. I think I mean, I'll give you what I think is the best case. Fourth Circuit as a page starts at page 20 of our of our opening brief says because virtually all fraud will involve misrepresentation, the realm of a special complexities and intricacies intricacies involves more than the forgeries, misrepresentation and concealment inherent in fraud. And I think that that case is important to this point, not only for what it says, but it uses that word as special, especially complex, especially intricate. And we're talking here this this added 15 months to the sentence. It added it increased it from 81 months to 96 months at the 25 percent increase. And all for something that, boy, sure, doesn't seem very sophisticated to me, much less especially sophisticated or complex. The government said the promissory note made it complex. I think the promissory note, if you go back and look at a promissory note. It was. The opposite of complex, I mean, it was I thought it was it was just kind of better than that, right? It's that the promissory note was done by the company lawyers once she told them that this guy wanted to pay the money back. But I think that's what the district court found. So she didn't even do the promissory. Yeah, again, it was I don't think it was the it was hard for it to be complex if she didn't even do it. It's after she said the guy wanted to pay the money back and the DMS lawyers drafted the promissory. Yeah, I mean, I think that I agree completely. And I think that, you know, for lack of a better word, the opposite of sophisticated would be somewhat hand handed. And I think that that does not merit 15 additional months. There are no further questions. No further questions. No. Thank you, Mr. Thank you, Mr. Thank you, Judge Tatum. We'll take this case under submission.
judges: Srinivasan, Millett, Tatel